**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 28, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

No. 03-51145

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ONE 1998 MERCURY SABLE VIN:  1MEMF50U4WA621967; ET AL.,**

**Defendants,**

**ELYAR GASANOV,**

**Claimant-Appellant.**

**Appeal from the United States District Court**
**for the Western District of Texas**
**(EP-02-CV-56-DB)**

Before BARKSDALE, GARZA, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Elyar Gasanov (Gasanov) contests the district court's granting the Government's motion to dismiss Gasanov's claim to three certificates of deposit (CDs), totaling $328,069, which are part of the assets at issue in a civil forfeiture proceeding. *United States of America v. One 1998 Mercury Sable*, EP-02-CA-056-DB (W.D. Tex. 2003) (*USDC Opn.*).  The district court ruled that Gasanov, a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

citizen and resident of Russia, had failed to establish the requisite Article III and statutory standing for contesting the forfeiture. Whether Gasanov has Article III standing should not have been decided by a motion to dismiss; he has the requisite statutory standing. Accordingly, the dismissal is **VACATED**; judgment is **RENDERED** for Gasanov's statutory standing; and this matter is **REMANDED**.

I.

The forfeiture proceeding is ancillary to the criminal prosecution of Gasanov's brother and sister-in-law, Sardar Gasanov and Nadira Gasanova (Sadar and Nadira Gasonov), citizens of Uzbekistan. Sardar and Nadira Gasanov were convicted of immigration and peonage (involuntary servitude in satisfaction of a debt) offenses related to smuggling three Uzbek women into the United States, who were subsequently forced, through topless dancing, to pay off their debts. It was alleged that the women earned more than $500,000 from January 1999 through May 2001.

The peonage offenses are considered "specified unlawful activities" under 18 U.S.C. § 1956(c)(7)(A) (defining as a "specified unlawful activity" any offense listed in 18 U.S.C. § 1961(1); § 1961(1) includes 18 U.S.C. §§ 1581-1591, sections "relating to peonage, slavery and trafficking in persons"). Therefore, the proceeds from those specified unlawful activities are subject to civil forfeiture. *See* 18 U.S.C. § 981(a)(1)(C)

2

(stating "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting [a] 'specified unlawful activity' ..." is subject to forfeiture to the United States).

The forfeiture complaint was filed in February 2002, listing two automobiles, the contents of ten bank accounts valued at $423,978, and $6,650 in United States currency.  That July, Sardar and Nadira Gasanov each filed a notice claiming a legal or beneficial interest in that property.  That August, Gasanov filed a notice claiming the three CDs in the amounts of $107,073, $137,988 and $83,008, included in the ten bank accounts.  He was the titled owner of those CDs.

Shortly after filing his notice of claim, Gasanov moved to dismiss the Government's complaint, pursuant to FED. R. CIV. P. 12(b)(6) and Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules), for failure to plead with particularity the statutory basis on which the complaint was based.  *See* 18 U.S.C. § 983(a)(4)(A) (requiring any person claiming an interest in property subject to a complaint of forfeiture by the Government to file his claim in accordance with the Supplemental Rules).  The Government was granted leave to amend.  After Sardar and Nadira Gasanov filed a similar motion, the Government was again granted leave to amend.  The final amended complaint was filed in November 2002.

That December, the three Gasanovs filed answers to the complaint. Gasanov did not respond, however, to the Government's interrogatories or document requests. The Government's motion to compel was denied; a new deadline was set for Gasanov to comply. Upon Gasanov's submitting responses to those discovery requests, the Government again moved to compel, claiming the responses were "non-responsive and evasive". Gasanov responded by claiming, *inter alia*: he was not able to comply with some of the requests because he did not have documentation for the sources of the monies used to purchase the CDs; and he had produced all documents of which he was aware.

In June 2003, the Government moved to dismiss Gasanov's claim, asserting Gasanov lacked Article III standing because he had failed to present sufficient evidence to support his ownership claim to the three CDs; and lacked statutory standing because he had failed to properly verify his claim pursuant to Supplemental Rule C(6) (requiring a person asserting an interest in the property that is the subject of the action to file a *verified* statement identifying that interest). The Government supported its motion with Gasanov's discovery responses, which the Government contended were insufficient to establish Article III standing. Gasanov's response in opposition, which cited no additional evidentiary materials, claimed his answer and discovery responses were sufficient to establish standing.

4

The district court denied the Government's motion; but it did so before the Government filed its reply to Gasanov's opposition to the motion. Accordingly, the Government moved to reconsider and included that reply. The district court granted the motion on 2 September 2003 and dismissed Gasanov's claim. The forfeiture order, as amended, was entered on 7 October 2003.

II.

As discussed below, we review *de novo* the district court's rulings on Article III and statutory standing.

A.

No authority need be cited for standing being an element of Article III's "case or controversy" requirement; its lack precludes subject matter jurisdiction. "The burden of establishing standing to contest forfeiture is on the claimant ...." ***Kadonsky v. United States***, 216 F.3d 499, 508 (5th Cir. 2000). The "claimant need not prove the *merit* of his underlying claim. He must, however, be able to show at least a *facially colorable interest* in the proceedings sufficient to satisfy the case-or-controversy requirement and the prudential considerations defining and limiting the role of the court". ***Id.*** (emphasis added) (quoting ***United States v. $9,041,598.68***, 163 F.3d 238, 245 (5th Cir. 1998)). This is consistent with our court's having previously held "that only 'owners' have standing to contest a forfeiture", but that term should be broadly construed "to include any person with a

5

recognizable legal or equitable interest in the property seized". *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1111-12 & n. 4 (5th Cir. 1992).

"Challenges to standing are disposed of in a number of different ways .... Some are disposed of [by motions to dismiss] .... [Others] are frequently resolved in summary judgment proceedings ... or at a trial on the merits." *Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214, 219 (5th Cir. 1989) (internal citations omitted). (Along this line, the day before originally denying the Government's motion to dismiss concerning Gasanov, the district court granted the Government's summary judgment motion against Sadar and Nadira Gasanov.) As further discussed *infra*, whether the standing issue can be resolved by a motion to dismiss depends on whether "considerations of standing can be severed from a resolution of the merits ...." *Id.* at 220; *see also United States v. SCRAP*, 412 U.S. 669, 689-90 (1973); *Lewis v. Knutson*, 699 F.2d 230, 237 (5th Cir. 1983).

If the standing challenge is brought properly by a motion to dismiss, the district court may conduct a preliminary hearing in order to resolve disputed factual issues. *Barrett Computer*, 884 F.2d at 220. "[I]n a preliminary hearing on a jurisdictional issue, the district court is given greater latitude and discretion than in a summary judgment proceeding where the district court must give deference on fact questions to the nonmovant". *Id*. For

6

example, a Rule 12(b)(1) motion to dismiss for lack of "subject matter jurisdiction[,] ... unlike summary judgment decisions, may be made using any one of the following bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts". *Id.* (internal quotations omitted); *see also* **Lewis**, 699 F.2d at 237; **Williamson v. Tucker**, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981). Factual findings are reviewed only for clear error. **Williamson**, 645 F.2d at 413; FED. R. CIV. P. 52(a).

"However, where issues of fact are central both to subject matter jurisdiction and the claim on the merits, ... the trial court must assume jurisdiction and proceed to the merits." **Montez v. Department of Navy**, ___ F.3d ___, 2004 WL 2712428, at *2 (5th Cir. 2004). Under these circumstances, any pre-trial challenge to the court's jurisdiction must be brought "as a direct attack on the merits of the ... case under either Rule 12(b)(6) or Rule 56". *Id.* (internal quotation omitted).

In granting the motion to dismiss, the district court resolved factual issues in favor of the Government. For example, the district court stated that the "evidence ... indicates that [Gasanov] is merely a nominal owner, and that convicted defendant *Sardar Gasanov is the true owner*"; noted that "*Sardar Gasanov comingled his money into the accounts* and, through a questionable

7

power of attorney, exercised control over the accounts"; and took "significant interest ... [in] the fact that the death beneficiaries [for the CDs] are the children of Sardar Gasanov, not those of Elyar Gasanov". *USDC Opn.* at *3-4 (emphasis added). (The record is silent, however, concerning whether Gasanov then had children.)

We review "*de novo* the legal issue of whether the district court has discretion to resolve disputed facts dispositive of subject matter jurisdiction, applying the same standard used by the district court". *Montez*, 2004 WL 2712428, at *2. Accordingly, at issue is whether disposition of the Article III standing issue requires ruling on the merits of Gasanov's claim. The district court did not address this issue. Nor did it conduct a preliminary hearing to resolve disputed factual issues.

In a civil forfeiture proceeding, the Government must prove by a preponderance of the evidence that the property is subject to forfeiture. *See* 18 U.S.C. § 983(c)(1). Thus, in the case at hand, the Government must prove by a preponderance of the evidence that the funds in question were the proceeds of "specified unlawful activities" – the peonage offenses committed by Sardar and Nadira Gasanov. *See* 18 U.S.C. §§ 1956(c)(7)(A), 1961(1).

As discussed *supra*, in order to satisfy his burden of establishing standing to contest the forfeiture proceedings, Gasanov may do so by showing at least a facially colorable claim.

8

On the other hand, an "unsupported assertion of ownership" will not suffice, **Kadonsky**, 216 F.3d at 508; Gasanov must present sufficient evidence to establish a facially colorable claim that he, not the peonage offenses committed by Sardar and Nadira Gasanov, was the source of the funds.

Gasanov claims the funds used to purchase the CDs, for which he is the titled owner, were invested in that manner by his brother, Sardar Gasanov, pursuant to a power of attorney (the validity of which is in dispute); he explains his lack of documentation is not unusual because it is common in Russia for income to be undocumented; and he points out that more than $130,000 had been invested in the CDs before the peonage offenses occurred (the Government does *not* contest this). In support, Gasanov points to (1) the deposition of the bank manager who notarized the power of attorney; (2) his interrogatory answers and response to the Government's motion to dismiss, which explain the sources of his income and asserts that it is not unusual to have undocumented income in Russia; and (3) the Government's complaint for forfeiture, which asserts that $138,662 of the CDs was invested in 1997, *before* any of the illegal activity occurred.

The foregoing reflects that the standing issue (whether the funds were originally Gasanov's) and the merits issue (whether the source of the funds was the peonage offenses) are coextensive. The "considerations of standing", therefore, can not "be severed from

a resolution on the merits". *See **Barrett Computer***, 884 F.2d at 220; ***Clark v. Tarrant County, Texas***, 798 F.2d 736, 741-42 (5th Cir. 1986). Therefore, Article III standing cannot be decided by a motion to dismiss. Accordingly, the district court erred in granting the Government's motion for that issue.

B.

Gasanov's attorney filed a verified claim on Gasanov's behalf. The Government contended that, in order to have statutory standing, Gasanov was required personally to verify his claim. The district court held: Gasanov failed to file a properly verified statement of claim as required by Supplemental Rule C (discussed below); therefore, he lacked statutory standing. Obviously, this issue of law is reviewed *de novo*.

Supplemental Rule C(6)(a)(ii) states: "In an in rem forfeiture action for violation of a federal statute: an agent, bailee, *or attorney* must state the authority to file a statement of interest in or right against the property on behalf of another". (Emphasis added.) The Government maintains this language "derives from ancient admiralty" and, therefore, should not apply in the modern era. The Government cites ***Mercado v. U.S. Customs Service,*** 873 F.2d 641, 645 (2d Cir. 1989), for the proposition that attorney verification is not valid to establish statutory standing to challenge a forfeiture. ***Mercado*** is distinguishable, however, from the case at hand.

At issue in **_Mercado_** was the sufficiency of the attorney affidavit used to verify the claim.  873 F.2d at 645.  That issue is not raised here.  Moreover, Supplemental Rule C(6) has been amended twice (2000 and 2002) since **_Mercado_** was decided (1989).  The Rule's plain language allows attorney verification.  Therefore, the district court erred in ruling Gasanov lacked statutory standing.

### III.

For the foregoing reasons, the forfeiture order is **VACATED**; judgment is **RENDERED** for Gasanov on his having statutory standing to challenge the forfeiture; and this matter is **REMANDED** to district court for further proceedings consistent with this opinion.

_**VACATED; RENDERED IN PART; REMANDED**_